IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2003

## DERWIN THOMAS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-24761      W. Otis Higgs, Judge**

---

**No. W2002-01964-CCA-R3-PC  - Filed April 7, 2003**

---

Through his post-conviction petition, Derwin Thomas challenges his 1998 Shelby County Criminal Court convictions of especially aggravated robbery, two counts of especially aggravated kidnapping, and two counts of first-degree murder. Following an evidentiary hearing, the lower court dismissed the petition, which had alleged ineffective assistance of trial counsel and the denial of a speedy trial. The petitioner appeals. Discerning that the record supports the lower court's findings and conclusions, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

C. Anne Tipton, Memphis, Tennessee, for the Appellant, Derwin Thomas.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jerry Kitchen, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The petitioner and a co-defendant were convicted of the 1995 kidnappings and murders of two teenage boys. Additionally, the petitioner was convicted of robbing one of the victims. The petitioner is serving two consecutive life sentences without parole. The petitioner's convictions were affirmed by this court, and the supreme court denied permission to appeal. *See State v. Aaron A. Winters and Derwin V. Thomas*, No. 02C01-9802-CR-00053 (Tenn. Crim. App., Jackson, Aug. 19, 1999), *perm. app. denied* (Tenn. 2000).

This court's direct-appeal opinion provides a narrative of the facts.

On May 30, 1995, seventeen year old Ira West and sixteen year old Malik Rashad Asberry were killed in an abandoned house in Memphis, Tennessee. Both were shot at point blank range.

Kenji Lewis testified that he spoke with the victims earlier that day and that they said they were going to meet Defendant Winters and smoke dope. There was testimony that in reality, Defendant Winters was angry at the victims for calling his mother's house and disturbing her.

Rodney Edwards, a fourteen year old boy who sold drugs for Defendant Thomas, testified that he met Defendant Thomas on the afternoon of the murder to drop off drug money. He then asked Defendant Thomas if he would have a smoke with him and Defendant Thomas agreed. A car drove up at that moment with Defendant Winters, Sekour Barnes, the two victims, and two other men inside. Edwards, the two Defendants, the two victims, and Barnes then proceeded to walk to an abandoned house which was frequented by drug dealers and users.

Edwards testified that he heard Defendant Thomas tell Defendant Winters, "Let's get these n_____s in the house so we can kill them." The Defendants went around to the front entrance, and Defendant Winters soon returned brandishing a gun at the two victims. Defendant Winters then began to force the victims into the abandoned house through a side window. One of the victims said he would give them anything he had on him, but he was grabbed by the neck and physically forced into the house through the window by Barnes. Barnes never actually entered the house. At some point, victim Asberry's necklace was taken from him. Edwards did not enter the house, but he did hear the victims begging and pleading for their lives. Edwards then heard four shots[,] and he and Barnes ran in opposite directions from the abandoned house.

A neighbor found the bodies lying one on top of the other in the kitchen. The kitchen was used as a bathroom by drug users and was covered with human waste. Victim Asberry's shoes had been stolen. One victim had been shot in the head [,] and the other had been shot in the neck.

After receiving a crimestoppers tip, investigators searched Room 230 of a nearby Motel 6. This was the room Defendant Thomas lived in and other people frequented. Defendant Thomas'

wallet and victim Asberry's necklace were found in the same drawer in Room 230.

Defendant Winters was present when the search was conducted at the Motel 6. He told police he knew about the murder of two juveniles, and he took them to a vacant house where the murder weapon was hidden. Winters was then taken in for questioning, and he admitted to being at the scene when the victims were killed. He described how each victim was shot, and how someone in the room removed victim Malik's shoes. He claimed he had nothing to do with the murders, but was only a witness to the murders.

Terrance Fitzgerald testified that he was with the Defendants after the murder and that he heard Defendant Thomas talking to Defendant Winters about killing two boys. Fitzgerald overheard Defendant Thomas say that one was shot in the neck and the other in the head. Defendant Thomas was talking about the struggling of one of the victims and how he had to be shot more than once. Fitzgerald also testified that Defendant Thomas took his revolver with him when he left the Motel 6 on the morning of the murders.

Alvinsea Fitzgerald, the sister of Terrance Fitzgerald and former girlfriend of Sekour Barnes, testified that she knew Defendant Thomas because a friend of hers had previously dated Defendant Thomas. Her friend and Defendant Thomas wrote letters to each other and Fitzgerald testified that she read Thomas' letters and knew his handwriting. Soon after the murders, she began receiving anonymous threatening letters telling her to keep her brother Terrance quiet. She recognized the handwriting as being that of Defendant Thomas.

Sekour Barnes testified at trial as to several letters given to him in jail by Defendant Thomas through an intermediary. The letters he discussed were reviewed by a State handwriting expert and determined to be written by Defendant Thomas. The letters were written to Mike Boyland, Tadarrio Britt (a.k.a. Tech 9), as well as men nicknamed G. Wayne, Yo Yo, and Crazy Legs. In each of these letters, Defendant Thomas tells the recipient what to say, in detail, about their knowledge of the murders. The letters ask recipients to memorize their trial testimony, to contact him after they speak with investigators, and to destroy the envelopes but keep the letters to prepare for their testimony. The letters also promise help in the

> future for this testimony. The trial court admitted the letters into
> evidence as statements against interest.

*Id.*, slip op. at 4-7.

In his petition for post-conviction relief, Thomas claimed that he was denied a speedy trial and the effective assistance of counsel at trial and on direct appeal. Upon our review of the record, the parties' briefs, and the applicable law, we affirm the lower court's denial of relief.

## *I. Applicable Law.*

a. Post-Conviction Procedure.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). On appeal, the appellate court accords to the trial court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). A claim for post-conviction relief is generally waived "if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn. Code Ann. § 40-30-206(g) (1997).

b. Speedy Trial.

The Fourth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution guarantee the right to a speedy trial in a criminal case. *See Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972); *see also* Tenn. Code Ann. § 40-14-101 (1997).

c. Ineffective Assistance of Counsel.

The Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). When a defendant claims ineffective assistance of counsel, the standard applied by the courts of Tennessee is "whether the advice given or the service rendered by the attorney is within the range of competence demanded [of] attorneys in criminal cases." *Summerlin v. State*, 607 S.W.2d 495, 496 (Tenn. Crim. App. 1980).

In *Strickland v. Washington*, the United States Supreme Court outlined the requirements necessary to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, the petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and must demonstrate that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Constitution. *Id.* at 687, 104 S. Ct. at 2064.

Second, the petitioner must show that counsel's performance prejudiced him and that errors were so serious as to deprive the petitioner of a fair trial, calling into question the reliability of the outcome. *Id.*; *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997).

"When addressing an attorney's performance it is not our function to 'second guess' tactical and strategic choices pertaining to defense matters or to measure a defense attorney's representation by '20-20 hindsight.'" *Henley*, 960 S.W.2d at 579 (quoting *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). Rather, a court reviewing counsel's performance should "eliminate the distorting effects of hindsight . . . [and] evaluate the conduct from the perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). On the other hand, "deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *Id.*

To establish prejudice, a party claiming ineffective assistance of counsel must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

### II. Post-Conviction Claims, Evidentiary Hearing Testimony, Lower Court's Rulings, and Disposition on Appeal.

We will now consider *in seriatim* the petitioner's appellate claims and, respectively, the post-conviction evidence, the lower court's rulings, and our disposition of each claim.

a. Speedy Trial.

Although the petitioner alleged in his petition for post-conviction relief that he was denied a speedy trial, he offered no proof on the issue in the evidentiary hearing. Apparently relying upon the record from the petitioner's trial, a copy of which was exhibited to the record of the post-conviction evidentiary hearing, the lower court found that one year and eleven months elapsed between the initiation of proceedings and the trial, that the delay was not extreme and was occasioned by the petitioner, that the petitioner made no demand for a speedy trial, and that the petitioner suffered no prejudice due to the lapse of time prior to trial. The court held via *Barker* that the petitioner's right to a speedy trial was not violated.

We need not revisit the post-conviction court's adjudication of the speedy trial claim, however. The petitioner could have raised the issue in his motion for new trial and on appeal, which he failed to do. Accordingly, the issue is waived for purposes of this post-conviction proceeding. *See* Tenn. Code Ann. § 40-30-206(g) (1997).

b.  Ineffective Assistance of Counsel.

(1)  Counsel's Failure to Take Account of and Exploit Terrance Fitzgerald's Tape-Recorded Prior Inconsistent Statement.

In the evidentiary hearing, the petitioner testified that the defense investigator interviewed Terrance Fitzgerald and obtained a tape-recorded statement of Fitzgerald saying that he had no knowledge of who killed the victims and that he had given a statement implicating the petitioner because he had been threatened by the police.  The petitioner testified that the investigator brought the recording to the jail and played it for the petitioner.  The petitioner agreed that evidence at trial showed that Fitzgerald testified at the preliminary hearing that he knew nothing about the murders.

The petitioner's trial counsel testified in the evidentiary hearing that he sent the investigator to interview Fitzgerald on numerous occasions and that, based upon the investigator's accounts of Fitzgerald's statements, counsel believed that Fitzgerald would testify consistently with his statements given to the police -- that he saw the petitioner take a pistol to meet the victims and that, after the shootings, he heard the petitioner describe killing the victims.  Counsel denied knowing about or hearing a taped statement wherein Fitzgerald denied knowing anything about the murders.  Counsel had no such tape in his file.  He testified that the procedure was that the investigator would give him accounts of the statements he had collected, and counsel would determine whether any of them would be useful to the defense.  He testified that the investigator had been killed in an automobile accident several months prior to the post-conviction hearing.  Counsel explained at the hearing that, when Fitzgerald testified at trial for the state consistently with the statements he had given the police, the attorney for the petitioner's co-defendant took the lead in cross-examining him.  The cross-examination was thorough, vigorous, and belabored Fitzgerald's contrary testimony in general sessions court.  Counsel believed that the jury heard more than ample evidence of Fitzgerald's alleged duplicity to the point that, had counsel possessed information about another instance of Fitzgerald telling an account that differed from his trial testimony, counsel would have been loath to use it at the risk of alienating the jury.

The post-conviction court apparently accredited counsel's testimony that he knew of no statement that was contrary to the statement Fitzgerald had given the police wherein he inculpated the petitioner.  Furthermore, the court found that the two defense lawyers thoroughly cross-examined Fitzgerald.  The court found no ineffective assistance in the manner in which counsel prepared for Fitzgerald's testimony or in his handling the testimony at trial.

We agree with the lower court.  The petitioner failed to establish by clear and convincing evidence that counsel failed to exploit a prior inconsistent statement and failed to effectively cross-examine Fitzgerald at trial.  Additionally, we defer to the post-conviction court to make judgments of credibility of witnesses testifying in the hearing.  We believe that the court accredited counsel's testimony that he had never received a tape-recorded statement, or an account thereof, in which Fitzgerald contradicted his testimony at trial.

-6-

(2) Counsel's Failure to Raise on Appeal the Trial Court's Denial of a Severance of Defendants.

Prior to trial, the defense moved to sever the trial of the petitioner from that of his co-defendant. The trial court denied the motion.[1] At trial, the co-defendant identified a handgun as the murder weapon. At the post-conviction evidentiary hearing, the petitioner complained that his counsel made no effort to exclude the gun from evidence, and the petitioner thought that it should have been excluded on the ground that the state offered no ballistics analysis that linked the gun to the shootings. On appeal, he argues that the presence of the gun before the jury highlighted the need for a severance of defendants and that trial counsel was remiss in not advancing this issue in the motion for new trial and on appeal.

Trial counsel testified that he discerned no basis for obtaining a severance on the ground that, via the co-defendant's testimony, physical evidence, albeit a handgun, was introduced into evidence at the joint trial.

The post-conviction court found that trial counsel reasonably saw no basis for a severance and exercised his discretion as counsel to delete the issue from the petitioner's new trial claims. The lower court found no deficient performance and no prejudice as a result of this action.

We need only comment that the petitioner established no prejudice as a result of counsel's failure to include the severance issue in the motion for new trial and, hence, in the appeal. The evidence at trial showed that a witness saw the defendant take a handgun to the encounter with the victims. One witness recounted that he heard the victims' pleas followed by gunshots. Fitzgerald recounted that the petitioner explained in detail how the victims were shot. We cannot imagine that a different result at trial would have been reached had a gun not been introduced through the artifice of a joint trial.

(3) Counsel's Failure to Include in the Motion for New Trial and on Appeal the Claim that the State Violated the Rules of Discovery.

Through information contained in a *Jencks* disclosure, *see* Tenn. R. Crim. P. 26.2, the defense learned at trial, for the first time, that two "crimestopper" tips had implicated two perpetrators of the murders other than the petitioner and his co-defendant. The petitioner advances on appeal that counsel was remiss in not pressing in his motion for a new trial and on appeal that the state had "violated the discovery rule."

Trial counsel testified that there was no opportunity to exploit this information at trial. Counsel moved for a mistrial on the ground that the state had not provided full discovery, but the trial court ruled that the information was not discoverable. Although counsel raised the issue in the

---

[1] Apparently, the state introduced at trial a pretrial statement of the co-defendant that had been redacted to remove references to the petitioner.

motion for new trial, he testified that it was not practical to develop the leads and to present witnesses to support the claim in the motion for new trial hearing.

The lower court found that counsel presented the discovery issue in the motion for new trial and on appeal and that the state had prevailed in both courts.

We note that the lower court is correct that the substantive issue was raised on appeal, but the issue now before us is whether counsel's handling of the issue in the motion for new trial and on appeal equated to ineffective assistance.

The belated disclosure of the crimestopper information was raised on appeal as a *Brady* constitutional violation. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963) ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). This court determined that the belated disclosure, as opposed to a non-disclosure, of the information did not equate to a *Brady* violation because no prejudice to the petitioner was apparent. *Aaron A. Winters*, slip op. at 16-19. This court reasoned that, because "the evidence presented at trial against [the petitioner] was overwhelming," a timely disclosure would not have altered the outcome. *Id.*, slip op. at 19. This court noted, however, that trial counsel "put on no witnesses [in the motion for new trial hearing] to support the allegations in the crimestopper tip[,] and no one testified as to what efforts, if any, were made to pursue the alleged 'leads' of the named individuals in the tip, and whether anything of value came from that effort." *Id.*

In this circumstance, we have focused upon trial counsel's failure to develop the crimestopper tip information for purposes of the hearing on the motion for new trial. Again, however, we must conclude that the petitioner failed to establish in his evidentiary hearing that he was prejudiced by counsel's failure to present witnesses at the hearing on the motion for new trial.

When the claim of ineffectiveness is predicated upon counsel's failure to present potential witnesses, their testimony should be offered at the post-conviction hearing. In this manner the court can consider (1) whether a material witness existed and could have been discovered but for counsel's neglect, or whether a known witness was not interviewed by counsel, and (2) whether the failure to discover or interview a witness prejudiced the petitioner. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). In failing to present evidence in the evidentiary hearing that the crimestopper tips led to witnesses who could have exonerated the petitioner, the petitioner has failed to establish that he was prejudiced by counsel's alleged deficiency in not developing the information in the motion for new trial proceeding.

Accordingly, the lower court did not err in denying relief on this issue.

*III.  Conclusion.*

Finding no reversible error, we affirm the judgment of the lower court.

_____
JAMES CURWOOD WITT, JR., JUDGE